917 A.2d 250 (2006)
391 N.J. Super. 72
CORYELL, L.L.C., as Assignee of M.D. Sass Municipal Finance Partners II, L.P., Plaintiff-Appellant,
v.
Paul CURRY and Wanda D. Price,[1] Defendants-Respondents, and *251
Leader Federal Bank for Savings n/k/a Union Planters Bank; Commercial Credit Corporation; Superior Asset Management, Ltd.; Richard Berlin, M.D.; County of Atlantic; State of New Jersey, Defendants.
Julian M. Blumenthal, Intervenor-Respondent.
Coryell, L.L.C., as Assignee of M.D. Sass Municipal Finance Partners II, L.P., Plaintiff-Respondent,
v.
Paul Curry and Wanda D. Price, Defendants-Respondents, and
Leader Federal Bank for Savings n/k/a Union Planters Bank; Commercial Credit Corporation; Superior Asset Management, Ltd.; Richard Berlin, M.D.; County of Atlantic; State of New Jersey, Defendants.
Julian M. Blumenthal, Intervenor-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 2006.
Decided October 5, 2006.
*252 Adam D. Greenberg, Voorhees, argued the cause for Coryell, L.L.C., as Assignee of M.D. Sass Municipal Finance Partners, II, L.P., appellant in A-3758-04T5 and respondent in A-3759-04T5 (Honig & Greenberg, attorneys; Mr. Greenberg and Robert N. Wright, on the brief).
Marc Friedman argued the cause for respondents Paul Curry and Wanda D. Price in both appeals.
R. Armen McOmber argued the cause for Julian M. Blumenthal, intervenor-respondent in A-3758-04T5 and intervenor-appellant in A-3759-04T5 (McOmber & McOmber, attorneys; Mr. McOmber, of counsel and on the brief).
Michael J. Fasano argued the cause for amicus curiae New Jersey Land Title Association in both appeals (Lomurro, Davison, Eastman & Munoz, attorneys; Edward C. Eastman, Jr., Freehold, of counsel; Mr. Fasano, on the brief).
Robert W. Keyser, Haddonfield, argued the cause for amicus curiae National Tax Lien Association in A-3758-04T5 (Kaplin, Stewart, Meloff, Reiter & Stein, attorneys; Mr. Keyser, of counsel and on the brief; Lisa A. Buckalew, Blue Bell, PA, on the brief).
Before Judges LEFELT, PARRILLO and SAPP-PETERSON.
The opinion of this court was delivered by
SAPP-PETERSON, J.S.C. (temporarily assigned).
These back-to-back appeals arise out of a tax foreclosure proceeding brought by plaintiff Coryell, L.L.C. (Coryell), as Assignee of M.D. Sass Municipal Finance Partners II, L.P. (Sass), foreclosing a tax sale certificate and selling property located at 5002 English Creek Road, Egg Harbor Township, New Jersey (property), to intervenor, Julian Blumenthal (Blumenthal). Coryell and Blumenthal appeal from a Chancery Division order vacating the default judgment of foreclosure and the subsequent sale of the property because notice to the mortgagee, Commercial Credit Corporation (CCC), was not served at an address "most" reasonably calculated to apprise CCC of the pending foreclosure action. We are satisfied that CCC was notified in a manner reasonably calculated to apprise it of the foreclosure action, thus satisfying Rule 4:64-1(f)[2] and the constitutional requirements of due process. Mullane v. Central Hanover B. & T. Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). We reverse and remand to the *253 Chancery Division to reinstate the foreclosure judgment and the sale of the property to Blumenthal.
The salient facts are not in dispute. Defendants Paul Curry and Wanda Curry (collectively, the Currys) originally purchased the property in 1976. In 1997, they obtained and properly recorded a second mortgage on the property from CCC. After obtaining the mortgage, the Currys failed to pay any property taxes, and between 1998 and 2000, the township held four tax sales to satisfy the unpaid taxes. In early 2003, the purchaser of three of the tax certificates, Sass, initiated foreclosure proceedings.
The summons and a copy of the complaint were served upon the Currys at the property, as were all other documents that required service throughout the course of the foreclosure proceedings. The Currys did not file an answer or otherwise plead to the complaint, nor did they respond to any of the notices served in connection with the action.
At the time the Currys executed the mortgage, the first page of the mortgage document identified the mortgagee as "Commercial Credit Plan Consumer Discount Company, doing business as Commercial Credit Corporation (a Pennsylvania Corporation) 2091 BLACKHORSE PIKE STE B-4 TURNERSVILLE NJ 08012." On the third page, below the signatures, appeared the following instructions in a box:
 -------------------------------------------------------------------------------------------------------------------------
| REQUEST FOR NOTICE OF DEFAULT |
| -----------AND FORECLOSURE UNDER SUPERIOR------------------ |
| MORTGAGES OR DEEDS OF TRUST |
| Lender requests the holder of any mortgage, deed of trust |
| or other encumbrance with a lien which has priority over this |
| Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, with a copy to P.O. Box |
| 17170, Baltimore, MD 21203, of any default under the superior encumbrance and of any sale or other foreclosure |
| action. |
--------------------------------------------------------------------------------------------------------------------------
A Gloucester County sheriff's officer served the summons and copy of the foreclosure complaint upon Dina Iacovelli, CCC's managing agent, at its office located at 2091 Blackhorse Pike, Suite B4, Turnersville, New Jersey, pursuant to Rule 4:4-4. CCC did not answer or otherwise plead to the complaint.
Default was entered against the Currys and CCC on December 9, 2003. Thereafter, on February 27, 2004, the court, pursuant to Rule 4:64-1(f), entered an "ORDER FIXING AMOUNT, TIME AND PLACE FOR REDEMPTION." The order directed defendants to appear at the Egg Harbor Township Tax Collector's office on April 16, 2004, to pay the amounts required to redeem the property and provided that "in default of said defendants paying to the Tax Collector the said sums . . . defendants stand absolutely debarred and foreclosed of and from all right and equity of redemption of, in and to the said lands and premises and every part thereof. . . ." Sass mailed copies of both orders via regular and certified mail to the Currys at the property and to CCC at the Blackhorse Pike address. On March 4, 2004, Dina Iacovelli acknowledged receipt of the certified mail. Neither the Currys nor CCC appeared at the Tax Collector's office in accordance with the order.
On June 3, 2004, final judgment was entered vesting title to the property in Coryell.[3] The order also granted Sass' motion to substitute Coryell as its assignee on the tax certificates. On June 15, 2004, *254 a copy of the final judgment was served upon the Currys and CCC.
Over the next three months, neither the Currys nor CCC took any action to exercise their statutory rights of redemption under N.J.S.A. 54:5-54. On September 9, 2004, Blumenthal purchased the property. Shortly thereafter, Blumenthal took action to evict the Currys from the property.
It is undisputed that notices related to the foreclosure action were never sent to the Maryland post office address; it is equally undisputed that CCC never contested service of any of the documents served at its New Jersey office, nor did it participate in any of the proceedings related to the foreclosure. In addition, CCC is not a participant in this appeal.
On November 15, 2004, the Currys filed a notice of motion to stay and vacate the foreclosure judgment. They also sought an order to show cause why execution of the writ of possession, scheduled for November 17, 2004, should not be stayed. The Chancery Division granted a stay of all proceedings.
On the return date of the motions, the Currys' attorney argued that CCC was "not put on proper notice" of the foreclosure proceedings and, as a result, CCC "didn't react in any fashion whatsoever, and we have the unfortunate and regrettable circumstances which have flowed therefrom in that my client[s] . . . now face an eviction from their home when, in fact, if the notification would have went to the right place, then the . . . tax arrears . . . could presumably have been taken care of. . . ."
The motion judge agreed and vacated the default judgment. In his written opinion, the judge found that service of the summons and complaint upon CCC's managing agent at the New Jersey address satisfied the requirements of Rule 4:4-4, which permits service "upon a corporation by serving a [copy of the summons and complaint on] a `managing . . . agent.'" On the other hand, he found that service of the order setting amount, time and place for redemption was defective because a copy of the order was not sent to the mortgagee, in accordance with its written request. The judge concluded that "a reasonable perusal of the mortgage document should have made plaintiff aware that notice of an order fixing amount, time, and place for redemption should have been sent to both the New Jersey and Maryland addresses provided by Commercial Credit Corporation" on the mortgage.
In his analysis, the motion judge noted that Rule 4:43-1 requires that service of an entry of default be sent to the same address where a defendant was originally served with process. By contrast, the judge observed that Rule 4:64-1(f) requires service of an order fixing amount, time and place of redemption at a defendant's address. The judge concluded that this distinction, "by inference, suggests that the address need not be the address at which service [of the complaint] was made" and that such an inference was reasonable, if not mandatory, for purposes of due process considerations, and therefore concluded that notice should also have been sent to the Maryland post office box.
The judge recognized the public policy favoring finality of tax sale foreclosure judgments, but reasoned that when that interest is balanced against elementary and fundamental requirements of due process, "[t]he tension between those two competing societal interests can be accommodated by requiring a foreclosing plaintiff to provide notice at the address known or, if more than one address is known, to the address most reasonably calculated to provide actual knowledge[,]" which in this case the judge determined was the Maryland *255 post office address. Therefore, the judge concluded that the service of the order did not comply with Rule 4:64-1(f) or due process requirements and, since CCC "could have unilaterally prevented the transfer of title of [the Currys'] property to Coryell if it had notice of the action and had timely redeemed, [the Currys] were deprived of the benefit of [CCC's] ability to redeem." The judge found that the remedy for the failure to properly serve CCC is "the discharge of the judgment and the discharge of the Writ of Removal issued pursuant to the judgment."
Coryell and Blumenthal moved for reconsideration. The judge denied both motions, and the present appeals followed. On June 16, 2005, we entered orders permitting New Jersey Land Title Association (NJLTA) and National Tax Lien Association (NTLA) to appear amici curiae.
Coryell and Blumenthal contend: (1) the order fixing the amount, time and place for redemption was served in accordance with court rules and due process; (2) the Currys' motion to vacate the final judgment of tax sale was time barred by the ninety-day limitation contained in N.J.S.A. 54:5-87; and (3) the court erred in finding that Blumenthal's rights, as a bona fide purchaser, were subordinate to the Currys' rights. Amici contend: (1) the tax foreclosure was properly conducted; (2) the Currys lacked standing to challenge the service upon CCC; (3) this court should take action to assure that the state policy supporting tax titles is effectuated; and (4) the issues implicated in this appeal are appropriate for certification before the Supreme Court.
Generally, a decision to vacate a default judgment lies within the sound discretion of the trial court, guided by principles of equity. Housing Auth. of Town of Morristown v. Little, 135 N.J. 274, 283, 639 A.2d 286 (1994). The decision to grant or deny a motion to vacate the entry of judgment "will be left undisturbed unless it represents a clear abuse of discretion." Ibid. Further, such relief is more liberally granted when the application is to vacate a default judgment. Marder v. Realty Constr. Co., 84 N.J.Super. 313, 319, 202 A.2d 175 (App.Div.), aff'd, 43 N.J. 508, 205 A.2d 744 (1964). In addition, if a judgment is void and, therefore, unenforceable, it is a particularly worthy candidate for relief, provided that the time lapse between the entry of the judgment and the motion to vacate the judgment has not been unreasonable and an innocent third party's rights have not intervened. See Bank v. Kim, 361 N.J.Super. 331, 336, 825 A.2d 566 (App.Div.2003) (citing Berger v. Paterson Veterans Taxi Serv., 244 N.J.Super. 200, 206, 581 A.2d 1344 (App.Div. 1990)).
In this case, the court vacated the judgment because it found service deficient under Rule 4:64-1(f) and under principles of constitutional due process. Where "a substantial deviation from service of process rules has occurred, casting reasonable doubt on proper notice," the affected parties have been denied due process and the judgment should be vacated. Jameson v. Great A & P Tea Co., 363 N.J.Super. 419, 425, 833 A.2d 626 (App. Div.2003), certif. denied, 179 N.J. 309, 845 A.2d 134 (2004). Here, because the motion judge's finding involved an interpretation of the law, we owe no special deference to the judge's legal conclusions. Muise v. GPU, Inc., 332 N.J.Super. 140, 157, 753 A.2d 116 (App.Div.2000).
The United States Supreme Court has established that due process does not require that notice be "most" reasonably calculated; rather it need only be "reasonably calculated, under all the circumstances, *256 to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Dusenbery v. United States, 534 U.S. 161, 168, 122 S.Ct. 694, 700, 151 L.Ed.2d 597, 605 (2002) (quoting Mullane, supra, 339 U.S. at 314, 70 S.Ct. 652). This well settled principle is firmly established in the decisional law of this State as well. Twp. of Montville v. Block 69, Lot 10, 74 N.J. 1, 10, 376 A.2d 909 (1977); see, e.g., Jameson, supra, 363 N.J.Super. at 425, 833 A.2d 626. Thus, the motion judge erred in concluding that the requisite notice is that which is "most" reasonably calculated to give notice.
Additionally, the constitutional requirement of due process does not mandate perfect service. Rather, due process contemplates effective service. See Citibank, N.A. v. Russo, 334 N.J.Super. 346, 352-53, 759 A.2d 865 (App.Div.2000). As we explained in Sobel v. Long Island Entm't Prods., 329 N.J.Super. 285, 292, 747 A.2d 796 (App.Div.2000), "default judgments will not be vacated for minor flaws in the service of process." Moreover, where the defect involves service of process upon a corporation's representative, that person "should be so integrated with the organization that he [or she] will know what to do with the papers and that he or she should stand in a position as to render it fair, reasonable and just to imply the authority to receive service." O'Connor v. Altus, 67 N.J. 106, 128, 335 A.2d 545 (1975).
In this case, CCC specifically requested that any foreclosure notice be sent to its "address set forth on page one of this Mortgage," which is the New Jersey address, "with a copy to P.O. Box 17170, Baltimore, MD 21203, of any default under the superior encumbrance and of any sale or other foreclosure action." The order fixing amount, time and place for redemption was mailed to CCC, by regular and certified mail, to the New Jersey address, and it is undisputed that CCC received actual notice of the order. Thus, CCC received notice to one of the listed addresses.
Furthermore, there is no evidence in the record to support the motion judge's factual conclusion that the Maryland post office address was the address "most" reasonably calculated to apprise CCC of the foreclosure action. Without the participation of CCC, there is no way to determine, precisely, why an additional copy was requested for the Maryland address.
Rule 4:64-1(f) requires that in an action to foreclose a tax sale certificate where default has been entered as to all defendants, the order of redemption shall be served by "ordinary mail on each defendant whose address is known at least 10 days prior to the date fixed for redemption." The rule does not require service to every address where a defendant may request that notice be sent.
Dina Iacovelli, the managing agent at CCC's New Jersey office, accepted and signed the receipt, thus acknowledging that she had received the order setting amount, time and place for redemption. To the extent the mortgage document directed that notice of foreclosure actions be sent to the New Jersey office, we presume CCC instituted internal procedures for disposition of foreclosure documents upon receipt. O'Connor, supra, 67 N.J. at 128, 335 A.2d 545; see also Davis v. DND/Fidoreo, Inc., 317 N.J.Super. 92, 98, 721 A.2d 312 (App.Div.1998), certif. denied, 158 N.J. 686, 731 A.2d 45 (1999).
There is no evidence in the record to indicate that Ms. Iacovelli, as a managing agent, was unfamiliar with CCC's procedures for receiving and responding to lawsuits. Although notice to the Maryland *257 post office address, as requested, may have provided an additional measure of certainty that CCC received notice of the proceedings, the failure to do so, in our view, did not contravene Rule 4:64-1(f) nor offend constitutional notions of due process and therefore should not have resulted in vacation of the judgment. See Jameson, supra, 363 N.J.Super. at 425, 833 A.2d 626. In light of this conclusion, we see no need to address the other points raised by defendants and amici and decline to do so.
Reversed and remanded for reinstatement of the judgment of foreclosure and the sale of the property to Julian Blumenthal. We do not retain jurisdiction.
NOTES
[1] n/k/a Wanda D. Curry.
[2] At the time this action was filed in the Chancery Division, the rule was identified as Rule 4:64-1(d). Effective September 1, 2006, it is now designated as Rule 4:64-1(f) and is referenced as such throughout this opinion. Other than the change in its designation from (d) to (f), there is no substantive change in the language of the rule.
[3] Assignment of Tax Certificate to Coryell, L.L.C. effective as of May 18, 2004.