**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3628-22

HAYLEE OLSEN,

     Plaintiff-Respondent,

v.

ZAMAN PIZZA INC d/b/a
DOMINO'S, MSJ ENTERPRISES
INC. d/b/a DOMINO'S,
DAVANTE PIDILLA,
NICOLETTE OLIVER, ISH (last
name currently unknown),
VICTORIA COLLINS, ANNETTE
BRAILSFORD, and GULUM (last
name currently unknown),

     Defendants-Appellants.

_____

Submitted January 22, 2024 – Decided February 22, 2024

Before Judges Berdote Byrne and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1431-21.

Andaiye Al-Uqdah, attorney for appellant.

McOmber, McOmber & Luber, PC, attorneys for respondent (Matthew Allen Luber, on the brief).

PER CURIAM

Defendants[1] appeal the trial court's denial of a motion to vacate default judgment, arguing the trial court erred in denying their motion and failing to find excusable neglect because it erroneously found defendants were lawfully served with the summons and complaint. They also argue, even if excusable neglect is not found, the damages portion of the case should be retried because defendants have meritorious defenses. Having reviewed the record in light of the applicable legal principles, we discern no errors in the trial court's findings that defendants were served with the complaint, had notice of the complaint in June 2021, and failed to establish excusable neglect. Accordingly, we affirm the denial of the motion to vacate default judgment. However, we conclude the trial court failed to make sufficient findings with respect to whether defendants were properly served with notice of the proof hearing, and with respect to the

---

[1] Plaintiff's complaint is filed against Zaman Pizza, Inc., (Zaman) d/b/a Domino's, MSJ Enterprises Inc. (MSJ) d/b/a/ Domino's, and several individual defendants, and alleges both Zaman and MSJ have the same registered place of business. Although unstated by any party, it appears the two franchises are owned by the same franchisee. Defendants Zaman and MSJ filed one brief on behalf of both entities and do not distinguish between the two. The individual defendants did not participate in the proof hearing or this appeal. We use "defendants" to refer to Zaman and MSJ collectively.

2

A-3628-22

elements of plaintiff's claims and damages. We, therefore, reverse and remand for a new proof hearing.

## I.

We glean the following facts from the record. Plaintiff was employed full-time as a customer service representative at Zaman in Millville beginning in 2019. Plaintiff was later promoted to assistant manager at the same time as another employee, defendant Davante Pidilla (Pidilla). Plaintiff alleges, while the two were completing the paperwork for their promotions, Pidilla showed plaintiff a picture of his genitalia on his phone.

Plaintiff reported the incident to defendant, Victoria Collins (Collins), a general manager at Zaman. Collins told plaintiff she needed to report the incident to the district manager, defendant "Ish." Plaintiff reported the incident to Ish and provided a written statement. After doing so, plaintiff alleges Zaman launched a "retaliatory campaign" against her by 1) immediately informing her that her promotion to assistant manager was placed on hold; 2) reducing plaintiff's hours by more than half; and 3) no one at the company would talk to her. Ish allegedly told plaintiff she had "no right to report [Pidilla]," that she "should have kept it to [herself]."

A-3628-22

Pidilla was later transferred to a Philadelphia location. The hold on plaintiff's promotion continued because Ish allegedly needed to "build trust in [her]." Nicolette Oliver, another general manager and named defendant, later said "Ish just wants everything to cool down."

On September 24, 2020, plaintiff broke her hand in an accident unrelated to work. The next day, Collins granted plaintiff leave to undergo surgery. Plaintiff underwent surgery on October 2, 2020. On October 11, 2020, while still on medical leave, a co-worker notified plaintiff that she had been fired. Plaintiff texted Collins seeking reassurance she still had her job and Collins responded "I don't see why not. Do you still want your job?" However, on October 29, 2020, when plaintiff informed Collins she was ready to return to work, Collins told plaintiff the Millville store was overstaffed, and she would need to transfer to another store or be "laid off."

On November 12, 2020, plaintiff told Collins she would accept a position at a different location. On November 16, 2020, she began work as an assistant manager at the Bridgeton location, owned by MSJ. Shortly after beginning work, plaintiff realized her co-worker, defendant Annette Brailsford, was remaining clocked in overnight to receive extra compensation. Plaintiff reported

A-3628-22

the issue to defendant "Gulum," who told plaintiff to "ignore it and keep [her] mouth shut."

After reporting Brailsford, plaintiff's hours were reduced to eighteen hours per week and her access to employees' timesheets was revoked. Plaintiff began work as a general manager around March or April 2021. Soon thereafter, plaintiff filed her complaint against defendants. Plaintiff alleges she was harassed and threatened in an effort to have her dismiss the litigation until she was constructively discharged.

Plaintiff's complaint filed May 13, 2021, alleged violations of New Jersey's Law Against Discrimination (NJLAD) N.J.S.A. 10:5-1- to -50, and the Conscientious Employee Protection Act (CEPA) N.J.S.A. 34:19-1- to -14.

On June 16, 2021, Collins accepted service of the summons and complaint on behalf of Zaman and MSJ at the 1101 North 2nd Street, Millville restaurant. Both Zaman and MSJ have the same headquarters address registered with the state: 335 Evesham Avenue, Lawnside, New Jersey.

Zaman and MSJ failed to answer or file a responsive pleading, which resulted in the entry of default against them on October 1, 2021. On April 1, 2022, default judgment was entered against Zaman and MSJ as to liability only.

A-3628-22

On September 27, 2022, counsel for plaintiff sent notice of the proof hearing to Zaman and MSJ at 1101 North 2nd Street, Millville by registered mail, return receipt requested. The trial court conducted a proof hearing on October 14, 2022, finding in favor of plaintiff.

At the proof hearing, the trial court found plaintiff met her prima facie burden. It found plaintiff's testimony credible, and there was "no doubt in the court's mind that [the Millville location's] . . . conduct certainly constitutes . . . discrimination, discriminatory conduct, sexual harassment, and further that the failure to then promote plaintiff because she reported inappropriate conduct would constitute retaliation." The trial court did not find "sufficient evidence" that the actions of the Bridgeton store, MSJ, were "something likely to constitute a violation of law or some substantial violation being reported of the assistant manager."

The trial court awarded $3,640 for the ten weeks plaintiff had her hours reduced, $75,000 in emotional damages, and $75,000 in punitive damages. On November 18, 2022, the court further awarded $3,155.30 in pre-judgment interest, $38,021.25 in attorneys' fees, and $1,330.59 in costs and expenses.

Thereafter, on April 11, 2023, plaintiff filed a writ of execution, which was granted, and a motion to turnover funds. In response, on June 15, 2023,

6

defendants filed opposition to the motion to turnover funds and a cross-motion to vacate the default judgment, claiming, for the first time, they had no timely knowledge of the claims because they were not properly served with the summons and complaint or notice of the proof hearing.

The director of operations for Zaman and MSJ, Sammia Ashraf (Ashraf), filed an affidavit in support of defendants' motion. Ashraf certified any legal correspondence concerning Zaman and/or MSJ "should be" directed to her. She stated Collins resigned from her employment "two to four" weeks after Collins accepted service of plaintiff's complaint and did not forward the papers to Ashraf before she left. Collins was rehired in January 2023, at which time she admitted to Ashraf she received the complaint. Ashraf certified "[o]n March 10, 2022, [she] received the first papers relating to this case, with the title 'entry of default.'" Ashraf certified she forwarded the order to the company's insurance broker to see if it would provide coverage but did not follow up. She did not hear from the broker until July 7, 2022, when she was told coverage was denied, and the matter was moot because the complaint had been dismissed. Ashraf claims the insurance broker made that statement in error. The insurance broker

7

did not submit an affidavit.[2] Ashraf claimed defendants did not receive notice of the proof hearing because they were sent to the Millville location and likewise "not elevated" to her.

The trial court heard oral argument on the motion to vacate default judgment. During the hearing, it listened to a recording of Ashraf discussing the lawsuit with plaintiff in June 2021 to determine if defendants had actual notice of the lawsuit. Ultimately, the trial court denied defendants' motion, finding:

> [T]he certification of Sammia Ashraf, which denies knowledge of the suit until March 10 of 2022, [is] inconsistent with the recorded telephone conversation from June of 2021 and the text messages. Ms. Ashraf called plaintiff asking about having sued defendant . . . and asked another manager to convince plaintiff to drop the lawsuit in exchange for payment of $1500.
>
> Ms. Ashraf acknowledges being aware of the entry of default as early as March 10, 2022. But other than sending information to the insurance broker in March of 2022, which was nine months after that telephone call, no other actions were taken until either – it looks like December of 2022. At this point when counsel filed a notice of appearance in this case on . . .

---

[2] During the motion hearing, counsel for defendants referenced a certification submitted by the insurance broker but the trial court stated it was not filed with the motion. No certification, other than Asraf's, has been included in the record on appeal.

February 27 . . . . , 2023, judgment had been entered four months earlier.

. . . .

But it wasn't until the current motion for the turnover of levied funds was filed that counsel moved to set aside the judgment.

. . . .

[T]he problem where I see an issue is the inability to establish inexcusable neglect here. . . . [T]here were what could best be . . . described as extraordinary delays by defendant[s] here. I do find, based upon the recordings, defendant[s] w[ere] aware of the suit in June of 2021, two years before the motion to vacate default judgment was filed. Further, defendant[s] w[ere] aware in March of 2022, [fifteen] months before the motion was filed, that default had been entered.

Plaintiff provides appropriate documentation reflecting notification to defendant[s] of the notice of default, the scheduling of the proof hearing, and the notice of the entry of default. Defendant[s'] response to this lawsuit can best be described as lackadaisical and the antithesis of excusable neglect. Rather the conduct here, defendant[s] simply chose to ignore the suit, hoping it would go away. And that obviously did not occur.

Defendants' appeal followed.

## II.

Pursuant to Rule 4:50-1(a), a default judgment will remain undisturbed unless the defendant shows the failure to appear or otherwise defend was due to excusable neglect under the circumstances and the existence of a meritorious

defense to both the cause of action and damages. U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 468-69 (2012). Excusable neglect has been defined as "something the parties could not have protected themselves from during the litigation." Romero v. Gold Star Distrib., LLC, 468 N.J. Super. 274, 298 (App. Div. 2021) (emphasis omitted). Corporations are held to a high standard in this regard because they are "entities that should expect to be sued from time to time," and they "have an obligation to institute procedures within their organization for receiving and responding to lawsuits." Id. at 298 (quoting Davis v. DND/Fidoreo, Inc., 317 N.J. Super. 92, 98 (App. Div. 1998)).

In granting a motion to vacate, trial courts are to exercise their sound discretion. Id. at 293 (quoting Coryell, L.L.C. v. Curry, 391 N.J. Super. 72, 79 (App. Div. 2006)). Absent an abuse of discretion, their decisions will not be disturbed by a reviewing court. Ibid. (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)).

Rule 4.50-1 grants courts the power to relieve a party from a final judgment under six conditions: a) "mistake, inadvertence, surprise, or inexcusable neglect," b) newly discovered evidence, c) fraud, misrepresentation, or other misconduct, d) when the judgment is void, e) when the judgment is satisfied, released, or discharged, and f) "any other reason justifying relief." A

10

motion to vacate pursuant to <u>Rule</u> 4:50-1(a) must be brought "within a reasonable time" but not later than one year after judgment. <u>R.</u> 4:50-2.

When evaluating motions to vacate judgment, courts weigh a defendant's promptness in moving to vacate against the prejudice to the plaintiff if default is vacated. <u>Reg'l Constr. Corp. v. Ray</u>, 364 N.J Super. 534, 543 (App. Div. 2003). Defendants argue that by not receiving proper notice, they have demonstrated excusable neglect. Defendants rely upon <u>Davis v. DND/Fidoreo, Inc.</u> in support of their argument. There, we applied <u>Rule</u> 4:50-1(f) to conclude the trial court mistakenly used its discretion to deny defendant's motion to vacate default judgment because there was "at least some doubt as to whether the defendant was in fact served with process" after an assistant manager failed to forward suit papers to the appropriate person. <u>Davis</u>, 317 N.J. Super. at 100 (quoting <u>Goldfarb v. Roeger</u>, 54 N.J. Super. 85, 92 (App. Div. 1959)). Defendants argue they should have been afforded similar liberality.

A. <u>Service upon defendants.</u>

Service upon a corporation is effected pursuant to <u>Rule</u> 4:4-4(a)(6) upon:

> any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at

11

the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties . . . .

The service of process rules require a plaintiff provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Davis, 317 N.J. Super. at 97 (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950)). "[I]t is sufficient if the [process server] serves a person whom he can reasonably expect will deliver the process to the appropriate person." Id. at 98. However, a default judgment will be considered void when a substantial deviation from service of process rules has occurred, casting doubt on proper notice. See Sobel v. Long Island Ent. Prods., Inc., 329 N.J. Super. 285, 293-94 (App. Div. 2000); see also Rosa v. Araujo, 260 N.J. Super. 458, 462 (App. Div. 1992).

Defendants argue plaintiff failed to properly serve them at their registered headquarters in Lawnside and the default judgment must be vacated as a matter of law. We disagree as defendants' arguments are belied by the record.

Notably, defendants do not dispute Collins was served, nor do they offer any evidence Collins was not a managing or general agent permitted to accept

12

service.  Instead, defendants argue service was improper because Ashraf was not personally served, and Collins allegedly failed to forward the complaint to her.

Collins was a managing agent pursuant to Rule 4:4-4(a)(6).  Ashraf's certification, stating she is the self-appointed, only authorized agent to accept service for Zaman and MSJ cannot obviate the service of process rules.  As general manager, defendants were properly served with the complaint when Collins accepted service.  Ashraf's certification ignores the disjunctive in the rule: "any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation."  (emphasis added).

Further, there is sufficient, credible evidence in the record to support the trial court's findings that defendants were aware of the litigation in June 2021.  Moreover, defendants admitted they were aware default had been entered by March 2022, but took no action until February 2023, and then only in response to plaintiff's motion to turnover funds.  Given these facts, defendants have not established excusable neglect.

B.    Defendants' actual notice.

Even if service was technically defective, the record aptly demonstrates defendants had actual knowledge of the lawsuit in June 2021, shortly after

Collins accepted service. The recording contains the following statements by Ashraf:

> • Is there any way we can fix the things between us [sic] than involving a third party. If you feel like we owe you money, tell me the number if that's what you think;

> • I'm representing the company and these people [sic] supposed to be but these people by doing the lawsuit and all of that, they are not getting hurt . . . because honestly when it happens in court its totally us even if you put their name on it, they're not going to get any kind of hurt . . . whatever the paperwork you sent, your lawyers sent, we're getting sued, we the company are liable for everybody's fault;

> • So are you willing to work with us, is there anything we can solve without bringing the court or lawyers in;

> • [Plaintiff]: I can give you [my lawyer's] number so you can contact her. [Ashraf]: So because if we have contact we have to give them all the documentation and paperwork and blah blah blah and it makes the process bigger and bigger so I am reaching out to you, me and you the purpose [indiscernible] to drop it all and let me handle it and I will make sure to do everything possible to make you happy;

> • I can get a lawyer too but I'm trying to avoid the lawyer fees and everything if there is something I can directly give you because you are going to have to

A-3628-22

pay lawyer fees . . . so if we can work directly with each other and avoid all that lets do that.

Ashraf also directed one of her subordinates, "Oscar," to convince plaintiff to drop her lawsuit in exchange for money. Based upon these statements, defendants cannot demonstrate they were not aware of the lawsuit in 2021. Moreover, they admit to being aware of the lawsuit as early as March 2022, but took no action until February 2023.

  C. <u>Whether the trial court erred in not reopening the proof hearing.</u>

Defendants urge us to reopen the proof hearing because they have meritorious defenses and because plaintiff failed to prove her claims for damages. On appeal, "[t]he decision granting or denying an application to open a judgment will be left undisturbed unless it represents a clear abuse of discretion." <u>Hous. Auth. of Morristown</u>, 135 N.J. at 283. "A court abuses its discretion when its 'decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" <u>State v. Chavies</u>, 247 N.J. 245, 257 (2021) (quoting <u>State v. R.Y.</u>, 242 N.J. 48, 65 (2020)) (internal quotation marks omitted). "When examining a trial court's exercise of discretionary authority, we reverse only when the exercise of discretion was 'manifestly unjust' under the circumstances." <u>Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth.</u>, 423 N.J. Super. 140, 174 (App.

Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

Where a defendant has defaulted, a court must nevertheless hold a proof hearing and a plaintiff must establish her claims. R. 4:43-2; see also Chakravarti v. Pegasus Consulting Grp., Inc., 393 N.J. Super. 203, 210 (App. Div. 2007) ("Judgment should not be entered without a proof hearing . . . although the question of what proofs are necessary is inherently within the judge's discretion."). Generally, the court need only determine the sufficiency of the allegations. Kolczycki v. City of East Orange, 317 N.J. Super. 505, 514 (App. Div. 1999). In the context of a proof hearing "trial courts have been directed to view a plaintiff's proofs 'indulgently' . . . and the general practice of our courts has been to require only a prima facie case . . . ." Heimbach v. Mueller, 229 N.J. Super. 17, 20 (App. Div. 1988); see also Pressler & Verniero, Current N.J. Court Rules, cm. 2.2.2 on R. 4:43-2 (2024) (stating "unless there is intervening consideration of public policy or other requirement of fundamental justice, the judge should ordinarily apply to plaintiff's proofs the prima facie case standard of R. 4:37-2(b) and R. 4:40-1, thus not weighing evidence or finding facts but only determining bare sufficiency"); Kolczycki, 317 N.J. Super. at 514.

Nevertheless, plaintiff may be held to the burden of establishing liability as well as damages, despite defendants' default.  See Johnson v. Johnson, 92 N.J. Super. 457, 465 (App. Div. 1966) ("Even though a defendant's answer is stricken for failure to make discovery, the plaintiff may be . . . precluded from recovery where the proof which he offers in support of his own case reveals a legal defense to his claim.").  Although the assertions made in a complaint are deemed true where defendants are in default, a court may nonetheless require a plaintiff to furnish proof on the issue of liability, as well as damages.  Ibid.

Defendants argue notice of the proof hearing was inadequate, and even if we conclude there is a lack of excusable neglect in responding to the complaint, they should be given an opportunity for an adversarial proof hearing.  Finally, defendants argue because the awarded damages were unliquidated, there are sufficient questions as to the merits of plaintiff's damage calculations to require the proof hearing be reopened.

1.    Notice of the Proof Hearing.

Rule 4:43-2(b) requires the party entitled to a judgment by default to "apply to the court therefor by notice of motion pursuant to R. 1:6, served on all parties to the action, including defaulting defendant . . . ."  Here, the record is devoid of proof plaintiff filed and served a motion for a proof hearing.  Instead,

17

the record suggests there was a court-generated notice entering default on September 1, 2022, against defendants, and a court-generated order scheduling a proof hearing for September 12, 2022. Although plaintiff served the court's notice of proof hearing on defendants by certified mail promptly on September 27, 2022, the court did not make findings as to whether notice of the proof hearing was proper pursuant to Rule 4:43-2(b).

2.    Defendants' participation in a proof hearing.

Even if defendants received proper notice, they would not have been able to participate fully in the proof hearing. Default was entered as to liability, and defendants, unless able to vacate default, would not be able to introduce evidence to counter liability. Although plaintiff still had to prove the elements of her claims, defendants could not present direct testimony or documentary evidence at the proof hearing and would be limited to challenging plaintiff's evidence in opening and closing statements and in cross-examining plaintiff's witnesses. Chakravarti, 393 N.J. Super. at 210-11.

3.    The trial court's findings at the proof hearing.

For a NJLAD hostile work environment claim, a plaintiff must prove the harassment "(1) would not have occurred but for the [plaintiff's] protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe

that (4) the conditions of [the workplace] have been altered and that the [workplace] environment is hostile or abusive." Morris v. Rutgers-Newark Univ., 472 N.J. Super. 335, 348 (App. Div. 2022) (quoting Shepherd v. Hunterdon Dev. Ctr., 174 N.J. 1, 24 (2002)); see also Dickson v. Cmty. Bus Lines, Inc., 458 N.J. Super. 522, 531 (App. Div. 2019).

When a plaintiff asserts a disparate treatment claim pursuant to NJLAD, we use the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[3] Grande v. Saint Clare's Health Sys., 230 N.J. 1, 17 (2017). A plaintiff must demonstrate he or she (1) belongs to a protected group, (2) performed the job at a level that met the employer's "legitimate expectations," (3) was fired nonetheless; and (4) the employer sought to hire or hired someone to perform the same work after the plaintiff's termination. Meade v. Township

---

[3] We use the test for a claim of discrimination predicated upon circumstantial evidence as plaintiff does not present direct evidence of discrimination. See A.D.P. v. ExxonMobil Rsch. & Eng'g Co., 428 N.J. Super. 518, 533 (App. Div. 2012) (first quoting McDevitt v. Bill Good Builders, Inc., 175 N.J. 519, 527 (2003), and then quoting Bergen Com. Bank v. Sisler, 157 N.J. 188, 208 (1999)) (stating direct evidence of discrimination is "evidence 'that an employer placed substantial reliance upon a proscribed discriminatory factor'" in deciding to terminate the employee and must "demonstrate . . . a hostility toward members of the employee's class, [and] a direct causal connection between that hostility and the challenged" termination).

of Livingston, 249 N.J. 310, 328 (2021) (quoting Zive v. Stanley Roberts, Inc., 182 N.J. 436, 450 (2005)); Grande, 230 N.J. at 17-18.

A plaintiff bringing a CEPA claim pursuant to N.J.S.A. 34:19-3[4] must establish

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity described in N.J.S.A. 34:19-3[]; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [Allen v. Cape May County, 246 N.J. 275, 290 (2021) (quoting Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003)).]

An award of punitive damages is governed by the Punitive Damages Act, N.J.S.A. 2A:15-5.9 to -5.17. In re Est. of Stockdale, 196 N.J. 275, 308 (2008). Such damages must be specifically sought in the plaintiff's complaint and accompanied by an award of compensatory damages. Ibid. The plaintiff must

_____

[4] Plaintiff's complaint brings a claim pursuant to CEPA generally. Plaintiff's complaint does not allege any facts indicating N.J.S.A. 34:19-3(b) is applicable. The elements of a prima facie CEPA claim are substantially similar regardless of whether a plaintiff sues pursuant to subsection (a) or (c). See Allen, 246 N.J. at 300 (Albin, J., concurring in part and dissenting in part) (quoting Kolb v. Burns, 320 N.J. Super. 467, 476 (App. Div. 1999)).

prove, "by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15-5.12(a). The factfinder should also consider, but is not limited to, those factors enumerated at N.J.S.A. 2A:15-5.12(b).

The conduct complained of must be "exceptional or outrageous," Saffos v. Avaya, Inc., 419 N.J. Super. 244, 263 (App. Div. 2011) (quoting Maiorino v. Schering Plough Corp., 302 N.J. Super. 323, 353 (App. Div. 1997)), and "especially egregious." Ibid. (quoting Rendine v. Pantzer, 141 N.J. 292, 314 (1995)). In unlawful discrimination cases, punitive damages are appropriate against an employer only if a plaintiff can show "there was actual participation by upper management or willful indifference." Ibid. (quoting Maiorino, 302 N.J. Super. at 354).

Irrespective of defendants' participation, the trial court did not address the elements of plaintiff's NJLAD or CEPA claims. Instead, it addressed plaintiff's credibility and the factual testimony presented.

In awarding $75,000 for emotional distress, the court did not accept plaintiff's diagnosis of depression or bipolar disorder because no medical proofs

were submitted.  Nevertheless, it found emotional distress and punitive damages were warranted as a direct result of defendants' failure to take appropriate action in response to plaintiff's complaints.

The entirety of the trial court's ruling as to damages was as follows:

> As far as the emotional impact of this, the employee's conduct, Pidilla's conduct, and the failure to take any action and rather instead to chastise plaintiff for that conduct certainly is even being generous to the defendant can best be described as reprehensible. Nobody should have to endure that type of conduct in their employment.
>
> The [c]ourt certainly finds that it would be expected that plaintiff would have had substantial emotional reaction, had been upset by that conduct. Plus she had to remain in employment there.  So the [c]ourt does find that is substantial, although the [c]ourt does not find evidence that could be – at least before me that plaintiff was diagnosed depressed or bipolar as a – as related to this.  I simply don't have any medical report or certification before me at this proof hearing.
>
> The [c]ourt finds the appropriate award for that emotional distress to be $75,000. Additionally, the [c]ourt believes that the conduct warrants the imposition of punitive damages for the conduct, and the [c]ourt will award punitive damages in the amount of $75,000.

The trial court did not address the elements of a claim for emotional distress and did not explain how it arrived at the figure of $75,000.  It also did

not address the elements of an award of punitive damages and did not explain how it arrived at an award of another $75,000.  The trial court's failure to make adequate findings of fact and conclusions of law requires us to remand for a new proof hearing.  Rule 1:7-4(a) obligates the trial court to "find the facts and state its conclusions of law thereon in all actions tried without a jury . . . ."  Our review is inhibited when the trial court fails to elaborate upon the reasons for its rulings.  Romero, 468 N.J. Super. at 304 (quoting Giarusso v. Giarusso, 455 N.J. Super. 42, 53 (App. Div. 2018)).  Naked conclusions, without supporting reasoning, cannot satisfy the requirements of Rule 1:7-4(a).  Ibid. (quoting Curtis v. Finneran, 83 N.J. 563, 570 (1980)).

In sum, we affirm the trial court's findings that defendants were properly served with the complaint and had actual notice in June 2021 of plaintiff's lawsuit, failed to timely act to preserve their rights, and cannot demonstrate excusable neglect.  Default judgment against defendants is affirmed.  However, because the trial court failed to make sufficient findings as to whether defendants were properly served with notice of the proof hearing, and because the trial court failed to make findings of fact and conclusions of law with respect to plaintiff's claims, particularly with respect to the quantum of damages it awarded, we vacate the judgment awarding damages and remand to the trial

23

court for a new proof hearing.  As the trial court made credibility determinations, we remand for a new proof hearing before a different judge.  See <u>Freedman v. Freedman</u>, 474 N.J. Super. 291, 308 (App. Div. 2023) (first citing <u>J.L. v. J.F.</u>, 317 N.J. Super. 418, 438 (App. Div. 1999); and then citing <u>P.T. v. M.S.</u>, 325 N.J. Super. 193, 220-21 (App. Div. 1999)).  We take no position regarding the outcome of the proof hearing.

Affirmed in part, reversed in part, and remanded for a new proof hearing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3628-22