**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2962-23

ROBERT OTTMANN,

    Plaintiff-Appellant,

v.

CHRISTOPHER HANLON and
DONNA MARSHALL,

    Defendants-Respondents.

_____

Submitted December 3, 2025 – Decided March 12, 2026

Before Judges Currier and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0264-22.

Cho Legal Group, LLC, attorneys for appellant (Kristen M. Logar, on the briefs).

Callagy Law, PC, attorneys for respondents (Jessica B. Shapiro and Michael J. Smikun, on the brief).

PER CURIAM

This litigation arises out of a business dispute between plaintiff Robert Ottmann and defendant Christopher Hanlon, former partners in Aquatic Technologies, Inc. (Aquatic). Plaintiff also brings claims against defendant Donna Marshall, Aquatic's former bookkeeper. Plaintiff appeals from trial court orders that: (1) vacated the entry of default judgment; (2) dismissed multiple causes of action in the third amended complaint (TAC); (3) denied plaintiff's motions to compel discovery and to quash an expert certification introduced by defendants; (4) denied plaintiff leave to amend his complaint and to reopen and extend discovery; and (5) granted defendants' motion for summary judgment and denying plaintiff's cross-motion for summary judgment.

After careful review, we affirm all the orders except the April 16, 2024 order granting defendants summary judgment on the grounds of res judicata. The issue regarding the parties' K-1 tax form arose after the prior litigation resolved. Therefore, it could not have been addressed in the earlier lawsuit and the court erred in applying the doctrine of res judicata to dismiss the claim.

I.

After their long-term business relationship deteriorated, plaintiff instituted suit against Hanlon that resulted in an agreement to dissolve the business, which ceased operations in March 2021. The parties agreed on Kal

2

Barson, CPA, to perform an accounting of the business finances. The dispute proceeded to arbitration; the subsequent arbitration award was confirmed by the trial court and later affirmed by this court on appeal. Ottmann v. Hanlon (Ottmann I), No. A-0655-21 (App. Div. Mar. 14, 2023) (slip op. at 3-5).

On July 1, 2022, while the appeal was pending, plaintiff filed a new action against Hanlon, Kelly McSpirit,[1] and Marshall. In the TAC, plaintiff alleges that Marshall oversaw and managed incoming and outgoing cash from Aquatic. According to plaintiff, after the arbitration, Hanlon and Marshall prepared inaccurate financial information that they provided to Aquatic's accountant, who then issued plaintiff a 2020 IRS Schedule K-1 statement based on the inaccurate information. Plaintiff alleges the K-1 document shows he received $522,517 in ordinary taxable income, $13 in interest income, and $2,531 in dividends, as well as a reported distribution of $416,797. However, he contends these amounts included excess distributions which he never received, therefore causing him to incur tax liability on unreceived income.

The TAC alleged the following causes of action: breach of the duty of good faith and fair dealing, conspiracy, negligence and breach of contract

---

[1] McSpirit is Hanlon's wife and was employed by Aquatic at one point. She was not listed as a defendant in the third amended complaint.

A-2962-23

against defendants; unjust enrichment, conversion, embezzlement; misappropriation, fraud and breach of fiduciary duty against Hanlon individually.

A.

After defendants failed to answer, plaintiff moved for the entry of default under Rule 4:43-1. On March 27, 2023, the court granted the motion and entered default in favor of plaintiff and against defendants jointly and severally for $89,827. On May 2, 2023, the court granted defendants' motion to vacate default judgment.

B.

Thereafter, defendants moved for judgment on the pleadings or alternatively to dismiss the TAC under Rule 4:6-2(e). Plaintiff cross-moved to dismiss defendants' counterclaim.

On August 7, 2023, the court granted defendants' motion in part, dismissing counts III, unjust enrichment; IV, conversion; V, embezzlement; VI, misappropriation; VII, fraud; VIII, negligence and X, breach of fiduciary duty. The court denied defendants' motion regarding count I, breach of the duty of good faith and fair dealing; II, conspiracy; and IX, breach of contract. The court also dismissed defendants' counterclaim.

A-2962-23

In a corresponding written statement of reasons, the court explained its decision for each of the counts. As to count III, the court stated:

> Here, there are insufficient facts alleged in the TAC to establish a claim for unjust enrichment against Hanlon or Marshall, as any claim in this regard would appear to be against Aquatic, the entity which issues or withheld appropriate disbursements. As noted, Aquatic has not been joined as a party.

Addressing count IV, the court explained "there are insufficient facts alleged in the TAC to establish a claim for conversion. The monies at issue were within the control of Aquatic to disburse or withhold, and Aquatic has not been joined as a party."

As to count V, the court stated "[t]here is no civil action in the common law for embezzlement. . . . Plaintiff now asserts a cause of action under N.J.S.A. 2C:20-20, which is a claim based on a statute, which is not pled in the TAC."

Considering count VI, the court explained that "[o]utside of trade secret misappropriation and intentional misappropriation of client funds by attorneys, there is no cognizable claim or cause of action for misappropriation. No such claim is properly alleged in the TAC."

As to count VII, the court found "there are insufficient facts alleged with specificity in the TAC to support a claim for fraud."

A-2962-23

Addressing count VIII, the court explained "there are insufficient facts alleged in the TAC to establish a claim for negligence.  In fact, [c]ount VIII of the TAC alleges actions by [d]efendants which are all intentional."

In considering count X, the court found "there are insufficient facts alleged in the TAC to establish a claim for breach of fiduciary duty.  In addition, this claim/cause of action resonates with the same issues that are involved with [c]ount I, [b]reach of the [c]ovenant of [g]ood [f]aith and [f]air [d]ealing.  Count X is therefore duplicative."

C.

Plaintiff subsequently moved to compel Hanlon's responses to the request for production of documents.  Plaintiff alleged Hanlon refused to supply the requested discovery materials and instead offered to meet and confer with plaintiff to reach an accord because plaintiff had erroneously served the discovery requests under the name Aquatic, who was not a party to the action.

Plaintiff also moved to quash any certification, deposition, or testimony submitted by Barson.  Plaintiff asserted Barson could not serve as defendants' expert because he was retained as a neutral accountant in Ottmann I.

The trial court denied both motions on November 27, 2023.  The court noted that Hanlon had answered plaintiff's discovery demands so there was no

merit to the motion to compel responses.  In addressing the motion to quash, the court stated:

> Barson was retained by the parties jointly to review the 2019-2020 financials.  Defendants now wish[] to obtain a certification or testimony from . . . Barson to have him provide details relating [to] . . . [plaintiff's] allegations, including specifically whether [plaintiff] and [d]efendant Ha[nlon] received equal distributions in 2020 and perhaps whether any funds were diverted by [d]efendants.
>
> If [plaintiff] asserts that . . . Barson is biased or erred in his opinions regarding . . . [plaintiff's] 2020 income, distributions or otherwise, [plaintiff] may certainly counter those opinions with a certification from his own expert and/or he can explore those issues during cross-examination or by presentation from his own expert.

### D.

Following the close of discovery, the parties filed dueling summary judgment motions.  Plaintiffs also filed motions for leave to amend the complaint and to extend discovery.  The court denied the motion to amend the complaint, stating:  "[The] property was sold on June 13, 2022[,] and plaintiff filed a [TAC] in Nov[ember] 2022.  Trial is scheduled for May 2024.  Plaintiff failed to timely amend."  The court also denied plaintiff's motion to extend discovery, reasoning:  "Trial [is] scheduled for May 20, 2024[,] and [there are

A-2962-23

no] exceptional circumstances."  Memorializing orders were issued March 15, 2024.

In their summary judgment motion, defendants contended the TAC was barred under the entire controversy doctrine, and on grounds of res judicata and collateral estoppel.  The court granted defendants' motion for summary judgment on the remaining counts on April 16, 2024.  In a written statement of reasons, the court explained:

> [The] court finds plaintiff's [TAC] is barred under res judicata because there was a final judgment, the parties in this matter are identical to those in the prior action and the claim in this matter grows out of the same transaction or occurrence as the prior action.  Plaintiff appears to conflate the doctrine of res judicata and collateral estoppel by arguing the matter is not barred by res judicata because there is no identity of the issues.  However, identity of the issues is not required under the doctrine of res judicata.  The fact that . . . the 2020 K-1 form was not specifically at issue in the prior litigation is of no consequence because this current action stems directly from the same contract between the parties and the same partnership at issue here.  The factual inquiry in the current action is virtually identical to the factual inquiry required in the prior action.  Culver v. Insurance Co. of North America, 115 N.J. 451, 462 (1989) (where the Court held res judicata applied where the factual inquiry was "virtually the same factual inquiry that was presented to the court in the earlier [] lawsuit").  Furthermore, the Court [in Culver] held "[t]he principle of res judicata applies not only to 'all matters litigated and determined by such judgment but also as to all relevant issues which could have been presented but

were not.'" [Ibid.] The issue of distributions was addressed in the prior action and the issue of the plaintiff's taxable income could have been raised in the prior action. Instead, plaintiff is attempting to revisit the prior action because he claims he is entitled to more damages. Plaintiff argues he was not given a copy [of] the K-1 form which he alleges is the subject of the current litigation until after arbitration. However, the fact that he was not given a document which contained information that was discoverable in the previous matter is not sufficient to warrant avoidance of the doctrine of res judicata.

Plaintiff's [TAC] is barred under res judicata and as a result this court need not consider any alternative grounds for dismissal.

[Third alteration in original.]

II.

On appeal, plaintiff contends the trial court erred in vacating default judgment, denying specified discovery motions, dismissing certain causes of action in the TAC and granting defendants summary judgment on the remaining causes of action on the grounds of res judicata. We address each in turn.

A.

Plaintiff argues the trial court erred in vacating default judgment because defendants did not demonstrate excusable neglect as required under Rule 4:50-1.

9

We review "a motion under Rule 4:50-1 to vacate [a] final judgment under an abuse of discretion standard." 257-261 20th Ave. Realty, LLC v. Roberto, 477 N.J. Super. 339, 366 (App. Div. 2023) (citing U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012)). "Generally, a decision to vacate a default judgment lies within the sound discretion of the trial court, guided by principles of equity." Coryell, LLC v. Curry, 391 N.J. Super. 72, 79 (App. Div. 2006). "Although the ordinary 'abuse of discretion' standard defies precise definition, it arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). "However, if a judge makes a discretionary decision but acts under a misconception of the applicable law or misapplies the applicable law to the facts," this court "need not extend deference." Johnson v. Johnson, 320 N.J. Super. 371, 378 (App. Div. 1999).

Under Rule 4:50-1, "the court may relieve a party . . . from a final judgment or order for" a multitude of reasons, including "(a) mistake, inadvertence, surprise, or excusable neglect; . . . or (f) any other reason justifying relief from the operation of the judgment or order." Rule 4:50-1 is

10

"designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." Guillaume, 209 N.J. at 467 (quoting Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993)).

Motions to vacate default judgment are "viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached." Marder v. Realty Constr. Co., 84 N.J. Super. 313, 319 (App. Div. 1964). However, "[t]he party seeking to vacate a default judgment has the 'overall burden of demonstrating that its failure to answer or otherwise appear and defend should be excused.'" Romero v. Gold Star Distrib., LLC, 468 N.J. Super. 274, 294 (App. Div. 2021) (quoting Jameson v. Great Alt. & Pac. Tea Co., 363 N.J. Super. 419, 425-26 (App. Div. 2003)).

After defendants received the TAC in November 2022, they moved to dismiss the complaint under Rule 4:6-2(e) for failure to state a claim and sent plaintiff a letter under Rule 1:4-8 demanding withdrawal of the suit as frivolous. The motion was denied on February 10, 2023. When defendants did not file an answer, plaintiff moved for and was granted default and then default judgment. Defendants moved to vacate default judgment within days of its docketing.

11

The court found the failure to file an answer was made in good faith and granting the motion to vacate default was warranted in the interests of justice. In addition, defendants raised a meritorious defense in asserting all issues pled in the complaint were adjudicated and resolved in Ottmann I.

Because defendants moved quickly to vacate default judgment and in fact had responded to the complaint with the dismissal motion, the court did not abuse its discretion in concluding that vacating the default judgment was warranted in the interests of justice.

B.

We turn to plaintiff's contentions regarding the dismissal of certain counts under Rule 4:6-2. "When deciding a motion to dismiss under Rule 4:6-2(e), the test to determine 'the adequacy of a pleading' is 'whether a cause of action is "suggested" by the facts.'" Doe v. Estate of C.V.O., 477 N.J. Super. 42, 54 (App. Div. 2023) (quoting MasTec Renewables Constr. Co. v. SunLight Gen. Mercer Solar, LLC, 462 N.J. Super. 297, 309 (App. Div. 2020)).

Therefore, on de novo review of a Rule 4:6-2(e) motion to dismiss, this court "assume[s] that the allegations in the pleadings are true and afford[s] the [non-moving party] all reasonable inferences." Sparroween, LLC v. Twp. of W. Caldwell, 452 N.J. Super. 329, 339 (App. Div. 2017). This court is not

concerned with a pleading party's ability to prove its allegations. <u>Printing Mart-Morristown v. Sharp Elecs. Corp.</u>, 116 N.J. 739, 746 (1989). "Nonetheless, 'the essential facts supporting plaintiff's cause of action must be presented in order for the claim to survive; conclusory allegations are insufficient in that regard.'" <u>AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co.</u>, 256 N.J. 294, 311 (2024) (quoting <u>Scheidt v. DRS Techs., Inc.</u>, 424 N.J. Super. 188, 193 (App. Div. 2012)).

1.

We begin with the dismissal of count III, unjust enrichment. Plaintiff alleged Hanlon and Marshall personally directly benefitted from the inaccurate K-1 statement and their withholding of disbursements to him. The trial court determined the allegations were insufficient to establish a claim for unjust enrichment against Hanlon or Marshall personally, because the claims should have been brought against Aquatic, as it was the entity which issued or withheld the disbursements.

The two elements of a quasi-contractual claim of unjust enrichment are: (1) the defendant received a benefit; and (2) retention of the benefit without payment would be unjust. <u>Goldsmith v. Camden Cnty. Surrogate's Off.</u>, 408 N.J. Super. 376, 382 (App. Div. 2009).

The 2020 K-1 statement shows that the disbursements were made to plaintiff from Aquatic, which was not named as a party. Any financial transaction or withholding was a corporate action, not the personal enrichment of either Hanlon or Marshall. Therefore, the claim could not be sustained. Moreover, the court dismissed the claim without prejudice, giving plaintiff the opportunity to cure the defect, which plaintiff did not do. The court properly dismissed this count.

2.

The trial court dismissed count IV, conversion, without prejudice for similar reasons. Plaintiff alleged Hanlon failed to "make Aquatic disbursements" to plaintiff and "converted money for his personal benefit."

Conversion is "the exercise of any act of dominion in denial of another's title to the chattels or inconsistent with such title." Lembaga Enters., Inc. v. Cace Trucking & Warehouse, Inc., 320 N.J. Super. 501, 507 (App. Div. 1999) (Mueller v. Tech. Devices Corp., 8 N.J. 201, 207 (1951)). The elements of quoting conversion are: (1) "the property and right to immediate possession thereof belong[ing] to the plaintiff" and (2) "the wrongful act of interference with that right by the defendant." First Nat'l Bank of Bloomingdale v. N. Jersey Tr. Co., 18 N.J. Misc. 449, 452 (Sup. Ct. 1940).

14

The trial court found the alleged facts did not support a claim of conversion as "[t]he monies at issue were within the control of Aquatic to disburse or withhold, and Aquatic has not been joined as a party." We discern no error.

3.

The trial court dismissed count V, embezzlement, finding there was no common law cause of action for civil embezzlement. Although not pled in the TCA, plaintiff argued in opposition to the motion for dismissal there was a statutory cause of action under N.J.S.A. 2C:20-20. Although the court again afforded plaintiff the opportunity to amend his complaint to assert this statutory claim if appropriate, plaintiff did not do so. The court properly dismissed counts V and VI as pled.[2]

4.

Turning to count VII, fraud, plaintiff contends he alleged the required elements to support the claim that defendants concocted a scheme to defraud him through the issuance of an inaccurate K-1 statement, resulting in tax liability for money he never received. However, what he alleged in the TCA was

---

[2] Plaintiff did not address the dismissal of Count VI in his merits brief; therefore, we need not do so either.

A-2962-23

"Hanlon represented he would properly and fairly handle the finances of [Aquatic] and [plaintiff] relied on this representation when he agreed to allow . . . Hanlon to handle [Aquatic's] finances."

The elements of a common law fraud claim are: (1) a representation or omission of a material fact; (2) made with knowledge of its falsity; (3) made with the intention that the representation or omission be relied upon; (4) reasonable reliance on the representation or omission; and (5) damages. DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 336 (App. Div. 2013). When fraud is alleged under the common law, the heightened pleading requirement under Rule 4:5-8(a) mandates that "[i]n all allegations of misrepresentation, [or] fraud . . ., particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally." See Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 112 (App. Div. 2009). The Rule is intended to ensure that a pleading includes enough facts "to enable the person charged to deny or disprove or explain these facts." Evangelista v. Pub. Serv. Coordinated Transp., 7 N.J. Super. 164, 168-69 (App. Div. 1950).

16

Here, plaintiff did not provide specific allegations regarding the timeline or context of the alleged fraud and does not specify what the nature of the alleged misrepresentation was nor how it was communicated beyond that "[d]efendant Hanlon represented he would properly and fairly handle the finances of [Aquatic]." The trial court properly determined that plaintiff had not met the heightened pleading standard for fraud and dismissed this claim.

5.

Although plaintiff entitled count VIII as negligence, the allegations are of only intentional acts done by defendants to purposefully cause harm to plaintiff. The allegations do not form the basis of a negligence claim. The court did not err in dismissing the count.

6.

The court also dismissed count X, breach of fiduciary duty, determining plaintiff failed to plead sufficient facts to establish the claim and it was duplicative of the claim for breach of the covenant of good faith and fair dealing.

Pertinent to this count, the TAC alleges: "As a fifty percent owner of Aquatic with [p]laintiff . . . [d]efendant Hanlon owed [p]laintiff . . . and Aquatic a fiduciary duty. . . . Defendant Hanlon breached his duty by retaining possession of Aquatic disbursements that belong to [p]laintiff . . . ."

A-2962-23

To establish a claim of breach of fiduciary duty, a plaintiff must prove (1) the parties had a fiduciary relationship, (2) the defendant breached a fiduciary duty owed to the plaintiff, (3) proximate cause, and (4) actual damages. See F.G. v. MacDonell, 150 N.J. 550, 563-64 (1997). "The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position." Id. at 563. The relationship arises when one party "is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." Ibid. Whether or not a fiduciary relationship exists is fact sensitive. Id. at 563-64.

The allegations in the TAC do not permit the court to glean this cause of action as there are no facts regarding the partners' relationship to suggest that Hanlon was in a superior position to plaintiff or "under a duty to act for or give advice."

We are satisfied the trial court did not abuse its discretion in dismissing counts III, IV, V, VI, VII, VIII, and X of the TAC. As stated, these counts were dismissed without prejudice and plaintiff did not attempt to cure the noted deficiencies.

A-2962-23

C.

Plaintiff contends the court erred by denying his motion to quash Barson's certification and testimony under Rule 4:10-3 because Barson served as a neutral expert in the previous litigation and therefore, it was a conflict of interest for him to testify for defendants in the current litigation.

In denying plaintiff's request for a protective order, the court found that

> Barson was retained by the parties jointly to review the 2019-2020 financials. Defendants now wish[] to obtain a certification or testimony from . . . Barson to have him provide details relating [to] Ottmann's allegations, including specifically whether Ottmann and . . . [Hanlon] received equal distributions in 2020 and perhaps whether any funds were diverted by [d]efendants.
>
> If Ottmann asserts that . . . Barson is biased or erred in his opinions regarding . . . Ottmann's 2020 income, distributions or otherwise, Ottmann may certainly counter those opinions with a certification from his own expert and/or he can explore those issues during cross-examination or by presentation from his own expert.

We generally defer to a trial court's decision on a motion for a protective order under Rule 4:10-3 "absent an abuse of discretion or a judge's misunderstanding or misapplication of the law." Cap. Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017). "[T]o overcome the presumption in favor of discoverability, a party" seeking a protective order

19

under Rule 4:10-3 "must show 'good cause' for withholding relevant discovery." Id. at 80.

The parties jointly retained Barson in Ottmann I as their neutral expert regarding Aquatic's 2020 financial picture. Here, defendants requested Barson to prepare a certification clarifying his prior analysis of the equality of the distributions. The trial court found Barson's testimony relevant and permitted plaintiff to counter with his own expert if desired. We discern no abuse of discretion in the court's order denying the motion to quash or for a protective order.

D.

Plaintiff appeals from several additional orders concerning discovery issues. Having considered them under an abuse of discretion standard as articulated above, we have found them to lack sufficient merit to warrant discussion in this written opinion. R. 2:11-3(e)(1)(E).

E.

We turn to the court's order granting defendants summary judgment on grounds of res judicata. "The doctrine of res judicata 'contemplates that when a controversy between parties is once fairly litigated and determined[,] it is no longer open to re[-]litigation.'" Selective Ins. Co. v. McAllister, 327 N.J. Super.

168, 172 (App. Div. 2000) (quoting Lubliner v. Bd. of Alcoholic Beverage Control, 33 N.J. 428, 435 (1960)).  Three elements must be met for res judicata to apply:  "[1] the judgment relied upon must be valid, final and on the merits; [2] the parties in the two actions must be either identical or in privity with one another; [and] [3] the claims [in the subsequent case] must grow out of the same transaction or occurrence."  Olds v. Donnelly, 291 N.J. Super. 222, 232 (App. Div. 1996), aff'd, 150 N.J. 424 (1997) (citing Watkins v. Resorts Int'l Hotel and Casino, Inc., 124 N.J. 398, 412-13 (1991)).

Res judicata precludes the relitigation of judgments.  Here, plaintiff does not seek to reopen the prior judgment; rather he filed a new cause of action regarding an issue between the same parties that arose after the entry of judgment.  Res judicata is not applicable here.

Defendant also raised the doctrine of collateral estoppel to the trial court as a bar to the second litigation.  Collateral estoppel forecloses the re-litigation of an issue when the party asserting the bar demonstrates:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding . . . ; (2) the issue was actually litigated in the prior proceeding . . . ; (3) the court in the prior proceeding issued a final judgment on the merits . . . ; (4) the determination of the issue was essential to the prior judgment . . . ; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

21

[Hennessey v. Winslow Twp., 183 N.J. 593, 599 (2005) (internal citations omitted) (quoting In re Estate of Dawson, 136 N.J. 1, 20-21 (1994)).]

That doctrine is also not applicable here. The K-1 was not issued before the arbitration in Ottmann I and was not considered by the arbitrator in rendering the arbitration award. Plaintiff challenged the propriety of the amount of the respective distributions of monies in Ottmann I. The arbitration award and subsequent judgment resolved that issue.

However, in this litigation, plaintiff alleges the K-1, prepared and received after the prior judgment, reflects a monetary amount of distributions he did not receive, which resulted in an increased tax burden to him. This is a new issue, not previously litigated by these parties.

The trial court erred in concluding res judicata applied to bar plaintiff from pursuing the limited remaining causes of action of breach of contract, breach of good faith and fair dealing and conspiracy—counts I, II and IX of the TAC. We reverse the grant of summary judgment to defendants on these counts under the April 16, 2024 order.

Affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

_M.C. Harley_

Clerk of the Appellate Division

22